## First Department, August, 1966

### (August 25, 1966)

■    In the Matter of ANTONIO B. ACEVEDO, Respondent, v. JAMES M. POWER et al., Constituting the Board of Elections of the City of New York, et al., Respondents, and ROBERT GARCIA, Appellant.— Judgment reversed upon the law and upon the facts and the petition dismissed, without costs and without disbursements.    (See *Matter of Badillo* v. *Santangelo*, 15 A D 2d 341.)    Concur — Botein, P. J., McNally, Stevens and Capozzoli, JJ.; Rabin, J., dissents and votes to affirm in the following memorandum:    I dissent and vote to affirm the decision of Special Term ordering a new election.    In this primary election for the Democratic nomination for the Assembly in the 77th District, Bronx County, the appellant led the respondent by 95 votes.    While the respondent here urged on argument that inquiry for claimed irregularities stopped when 103 invalid votes were found, and while the opinion at Special Term stated that "it appears that *at least* 103 votes cast in this election were cast by

---

* Not published with other decisions of March, 1966, 25 A D 2d 688.— [REP.

persons ineligible to vote", we will here assume that there were only 103 invalid votes. [Emphasis added.] It having been established that the number of invalid votes was greater than the margin of victory, I am of the opinion that sufficient was shown to mandate a new election, it being my belief that such election was "characterized by such frauds or irregularities as to render impossible a determination as to who rightfully was nominated". (Election Law, § 330, subd. 2; see *Matter of DeSapio* v. *Koch,* 14 N Y 2d 735; *Matter of Branagan* v. *Todd,* 19 A D 2d 337, affd. 13 N Y 2d 888.) It is urged by the appellant that for the outcome of the election to have been affected, he would have had to receive 92.2% of the invalid votes cast, while petitioner received none. It was concluded that the case falls within the rule stated in *Matter of Badillo* v. *Santangelo* (15 A D 2d 341, 342) wherein it was stated that an election should not be "overturned upon a mere mathematical possibility that the result could have been changed when the probabilities all combine to repel any such conclusion." Since that decision in this court (no appeal was taken to the Court of Appeals in that case), new elections have been ordered by the Court of Appeals where the winner would have had to receive 81.5% of the invalid votes to affect the result (*Matter of DeSapio* v. *Koch, supra*) and in another case 85% of the invalid votes cast (*Matter of Branagan* v. *Todd, supra*). The percentage involved here is as stated 92.2%. We are, therefore, asked to draw a line of demarcation between 85% and 92.2%. I cannot find any sound basis to determine where such a line should be drawn. To do so would be to engage in speculation for "to determine probabilities" rather than possibilities carries us into that field. In any event, to make a determination in such a manner is artificial, unreliable, and may in some instances deprive one who should have been the victor — counting only legal ballots — of the fruits of his victory. To insure the sanctity of the elective process, a more certain and steadfast rule should be adhered to, and as I have already stated, I believe it sufficient to mandate a new election where the number of invalid votes exceeds the margin of victory. It is the possibility that the results could have been changed rather than the mere probability that should govern. To do otherwise might put a premium on fraud should there be an organized effort to capture an election. In such case all and not merely a percentage of the illegal votes could be cast for the supposed winner.